UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.  1:03-CR-036 |
| ) | |
| STEVEN L.  KITCHIN ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On July 12, 2004, Defendant, Steven L. Kitchin ("Kitchin") filed a motion to reconsider this court's Sentencing Memorandum of Decision and Order dated June 10, 2004 in which the court enhanced defendant's base offense level for his mail fraud and tax evasion convictions two levels under U.S.S.G. §2F1.1(3) because the mail fraud offense was committed through mass-marketing. In addition to the court's conclusion that the above enhancement was appropriate, the presentence investigation report contained an eleven (11) level enhancement pursuant to U.S.S.G. §2F1.1(B)(1)(L) because the loss was more than $800,000 but less than 1,500,000.  Kitchin did not object to this adjustment and the issue was not presented to the court.

In light of  the Supreme Court's decision in *Blakely v. Washington,* 124 S.Ct. 2531 (2004) and the Seventh Circuit's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004) decided soon thereafter, the court stayed Kitchin's sentencing pending the outcome of the appeal to the Supreme Court.  On January 12, 2005, the Supreme Court decided *United States v. Booker*, 125 S.Ct. 738 (2005), which as all parties to this case are well-aware, made the United States Sentencing Guidelines advisory and retained the preponderance of the evidence standard for enhancements under the guidelines.  *See United States v. McReynolds,* 397 F.3d 479, 480 (7th Cir. 2005) ("[T]he

1

remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application."). The Supreme Court's decision seemingly mooted Kitchin's motion for reconsideration and thus, on March 21, 2005, the Court held a telephone status conference to discuss the prospect of proceeding to a full sentencing hearing. At that time, defense counsel agreed that *Booker* mooted any Sixth Amendment objection to the enhancements Kitchin raised, but, he argued instead that pursuant to *United States v. Huerta-Rodriguez,* 355 F.Supp.2d 1019 (D.Nebraska 2005), due process considerations required a finding of the enhancements by a jury beyond a reasonable doubt or, in the alternative, a finding by the judge beyond a reasonable doubt that the enhancements were warranted. The court ordered briefing on this argument. Subsequently, two other cases addressing the appropriate burden of proof based upon the due process clause were decided, see *United States v. Pimental*, 367 F.Supp.2d 143 (D. Mass. 2005) and *United States v. Coleman,* 370 F.Supp.2d 661 (D.Ohio 2005). Because these cases called into question the judicial fact-finding process during sentencing, the court ordered another round of briefing as to the import of these cases. With those briefs now received, the court turns now to an examination of the law as it applies to the facts set forth herein.

**Due Process Contention**

As noted in our earlier order requesting supplemental sentencing briefs, Kitchin contends that even after *Booker* he is entitled to have guideline enhancements found by a jury beyond a reasonable doubt or, in the alternative, by a judge beyond a reasonable doubt not, because of the Sixth Amendment's guarantees discussed in *Booker,* but because of the guarantee that no person shall be deprived of liberty without due process of law as set forth in the Fifth Amendment.

Because, he argues, the undersigned made findings by a preponderance of the evidence as to the mass-marketing enhancement and the probation officer tacked on an additional 11 level enhancement for the amount of loss without having a jury pass on that issue, due process was violated and the enhancements should not be applied to add to his advisory guideline sentence.

In response to these arguments, the Government relies[1] on *Booker* in tandem with a line of Seventh Circuit cases both before and after *Booker* wherein the Seventh Circuit has expressly indicated that the *Sixth Amendment* is satisfied by judges finding sentencing factors by a preponderance of the evidence so long as there is flexible application of the guidelines. *See McReynolds,* 397 F.3d at 480. In response to this court's specific request for briefing on the due process concerns which Kitchin raises presently, the Government has also submitted numerous authorities in support of its position that due process is satisfied by use of the preponderance of the evidence standard.

The starting point for the analysis is with the Due Process clause itself which provides that no person shall be deprived of liberty without due process of law. This said, the Supreme Court has made clear that "[i]t is the manifest duty of the courts to vindicate those guarantees," *United States v. Nixon*, 418 U.S. 683 (1974), and thus, the question here is whether a sentence imposed using the advisory guidelines regime would in fact vindicate the due process guarantee.

In a trilogy of Supreme Court Cases, the Supreme Court has made what has come to be known as a "sea change" in the law relating to federal sentencing. Beginning with *Apprendi v. New*

---

[1] Given the briefing deadline in this case, the Government did not have the benefit of the decisions in either *Pimental* or *Coleman* discussed herein.

*Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[2]

Then, in *Blakely v. Washington,* the Supreme Court overturned a Washington state court criminal sentence, first reiterating the holding of *Apprendi*, that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely,* 124 S.Ct. at 2536. It then expanded that holding by concluding that the relevant statutory maximum is not the maximum the judge may impose after finding additional facts, but rather the maximum a judge may impose without any additional findings. *Id*. at 2537. In other words, the Supreme Court clarified that it is the province of the jury to make the findings of fact that bear upon the length of a defendant's sentence.

Following the Supreme Court's decision in *Blakely,* which spoke only to the State of Washington's sentencing scheme, the Supreme Court decided *United States v. Booker* wherein "the Supreme Court held that defendants have a right to a jury trial on any disputed factual subject that increases the *maximum punishment*, and that the federal Sentencing Guidelines come within this rule to the extent that their operation is mandatory." *McReynolds,* 397 F.3d at 480. As a result, the remedial portion of *Booker* held that the federal Sentencing Guidelines remain in force, although 18 U.S.C. §3553(b)(1), which makes their application mandatory, no longer governs. *Id.* at 481.

Kitchin contends that due process is violated even by virtue of the non-mandatory or

---

[2]In practical application *Apprendi* required, in drug sentencing cases for example, a drug type and amount "sufficient to trigger the higher statutory maximum of § 841(b)(1)(A) or (B) be charged in the indictment and found by the jury." *United States v. Mietus,* 237 F.3d 866, 874 (7th Cir.2001).

4

advisory guidelines, because of the possibility that a sentence could be increased by facts not proven beyond a reasonable doubt to either a judge or a jury. Thus, he advocates that the reasonable doubt standard should apply during the sentencing phase as well.

On numerous occasions, the Supreme Court has specifically distinguished facts that are elements of a crime from facts relating to calculation of a sentence. See *Apprendi,* 530 U.S. at 485-90 (indicating that within certain constitutional limits, Congress can identify which factors are elements of a crime and which are sentencing factors); see also *McMillan v. Pennsylvania*, 477 U.S. 79, 91 (1986); *United States v. Watts*, 519 U.S. 148, 157 (1997). Due process requires that the government prove each element of an offense for which it seeks conviction beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 477. But, after the government has met this burden and an offender is found guilty of a crime, courts can apply sentencing factors based on a preponderance of the evidence in order to increase the offender's punishment. *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). Indeed, *Watts* held that "application of the preponderance standard at sentencing generally satisfies due process." *Watts*, 519 U.S. at 157 (citing *McMillan*, 477 U.S. at 79).

Moreover, this is the approach of the guidelines themselves which examines due process from the perspective of whether the sentencing factors are "reliable." Section 6A1.3(a) provides that when any factor important to the sentence is disputed "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. §6A1.3(a). This holding is in accord with a line of Seventh Circuit authority holding that due process is satisfied where the reliability of sentencing information is ascertained through a preponderance

5

of the evidence standard. *See United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000) ("A criminal defendant has a due process right to be sentenced on the basis of reliable information."); *United States v. Chemetco, Inc.* 274 F.3d 1154, 1158 (7th Cir. 2001) ("courts can apply sentencing factors based on a preponderance of the evidence in order to increase the offender's punishment."); *United States v. Lanterman*, 76 F.3d 158, 161 (7th Cir. 1996) ("If the facts of the PSR have sufficient indicia of reliability, a mere denial of the facts by the defendant is insufficient to call into doubt the correctness of the PSR."); see also *United States Yagar*, 404 F.3d 967, 972 (6th Cir. 2005)("[A] finding under the Guidelines must be based on reliable information and a preponderance of the evidence...").

All of this history, however, begs the question presented by Kitchin here, that is, whether *Booker's* holding and/or the Fifth Amendment due process clause in light of *Booker* requires a more exacting burden of proof relating to sentencing factors. On this point, Kitchin points to recent district court decisions in other circuits which have concluded that *Booker*, at the very least, calls into question whether a preponderance of the evidence standard is legally sufficient.

In *United States v. Huerta-Rodriguez*, the district judge held that when imposing a "reasonable" sentence, due process, not the Sixth Amendment as was the issue in *Booker,* requires a defendant to be afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence. In practice, the district judge concluded that he will "continue to require that facts that enhance a sentence are properly pled in an indictment or information, and either admitted, or submitted to a jury (or to the court if the right to a trial by jury is waived) for determination by proof beyond a reasonable doubt." *Huerta-Rodriguez,* 355 F.Supp.2d at 1029. The court went on to state that

6

"although *Booker's* Sixth Amendment holding may not require such a procedure, it is not precluded." *Id.*

Subsequent to *United States v. Huerta-Rodriguez*, the District of Massachusetts in *United States v. Pimental* agreed with the general proposition of *Huerta-Rodriguez* and concluded that Due Process requires a heightened standard of proof in determining sentencing enhancements:

> Indeed, even if the Sixth Amendment's jury trial guarantee is not directly implicated because the regime is no longer a mandatory one, the Fifth Amendment's Due Process requirement is...Certain facts are significant, whether or not they play a dispositive role...We cannot have it both ways: We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.

*Id.* at *8. The *Pimental* court then went on to determine beyond a reasonable doubt whether the guideline enhancements were appropriate.

In a third case, *United States v. Coleman*, the court examined the due process issue raised in *Huerta-Rodriguez* and *Pimental* and concluded that:

> In interpreting the practical effects of the two majority opinions in *Booker*, most courts agree that judicial fact-finding may be made by a preponderance of the evidence so longa s the court is operating in an advisory regime...[3]
>
> This Court believes that [ ] all enhancements should be determined by beyond a reasonable doubt, but, in light of [United States v. ]Yagar's[4] dicta and the multi-circuit consensus, the Court will continue to review enhancements, with the exception of those relating to acquitted conduct by a preponderance of the evidence.

---

[3] Citing to and quoting from *United States v. Yagar,* 404 F.3d 967, 972 (6th Cir. 2005); *United States v. Guzman*, 404 F.3d 139, 143 (2d Cir. 2005); *United States v. McReynolds*, 397 F.3d 479, 481 (7th Cir. 2005); *United States v. Mares,* 402 F.3d 511, 519 (5th Cir. 2005).

[4] 404 F.3d at 972 ("[A] finding under the Guidelines must be based on reliable information and a preponderance of the evidence...").

7

*370* F.Supp.2d at 667.  While  not formally adopting a beyond a reasonable doubt standard for enhancements, the court explained in a footnote why it believed the due process argument has some merit:

> The Court finds that the beyond a reasonable doubt standard reflects the seriousness of the determinations made within the criminal justice system, as opposed to the civil system. *See United States v. Gray,* 362 F.Supp.2d 714, 720 (S.D.W.Va.2005) ("In a civil action that only involves monetary damages, 'we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor,' and accordingly it 'seems peculiarly appropriate' to apply a preponderance standard.)" *Id.* at (citing *In re Winship,* 397 U.S. 358, 370-71, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)). By contrast, "in criminal matters 'we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.' " *Id.*
>
> To the extent that an enhancement detracts from a defendant's liberty, its imposition should be considered with extreme scrutiny. *Gray,* 362 F.Supp.2d at 723 ("Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions.") (citing *Winship,* 397 U.S. at 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)); *United States v. Pimental,* 367 F.Supp.2d 143, 150-51, 154, 2005 WL 958245, at *6, *8 (D.Mass.2005) (finding the Fifth Amendment requires application of the beyond a reasonable doubt standard to enhancements because each judicial finding of fact has "quantifiable consequences" on the defendant's sentence); *see also United States v. Huerta-Rodriguez,* 355 F.Supp.2d 1019, 1027 (D.Neb.2005) (" [T]his court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendments in connection with any facts on which the government seeks to rely to increase a defendant's sentence.").

*Id.* at 668, fn. 8.

Despite these cases, at least one district court has concluded, and this court believes rightly so,  that to apply a more exacting standard onto the Guidelines is contrary to *Booker's* remedial opinion.  *United States v. Wilson*, 355 F.Supp.2d 1269, 1272 -1273 (D.Utah 2005).  Indeed, the

8

court in *Wilson* specifically rejected the *Huerta-Rodriguez* approach, quoting *Booker*[5] and stating that "the remedial majority flatly rejected [a beyond a reasonable doubt standard], concluding it 'would destroy the system.' *Id.*

> To avoid destroying "the system," the remedial majority severed only the two provisions in the Sentencing Reform Act that rendered the Guidelines mandatory, concluding that with these provisions gone "the remainder of the Act satisfies the Court's constitutional requirements." Of course, this court is obligated to follow the holding of the "remedial majority" in *Booker* and give effect to its conclusion that "the remainder of the Act" remains in place. Therefore, the court must determine the advisory Guidelines range in the way that it always has, through judicial fact-finding under a preponderance of the evidence standard. (Just today, the Second Circuit reached the same conclusion.)

*Id.*

Having carefully reviewed this issue, the cases cited above, the legal precedent underlying the decisions, and, in particular, the remedial portion of the *Booker* opinion, this court will continue to proceed as it has pre-Booker and apply a preponderance of the evidence standard to sentencing factors. This is the standard endorsed by the Seventh Circuit in *McReynolds v. United States*. 397 F.3d 479, 480 (7th Cir. 2005):

> *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence...

---

[5] "To engraft the Court's constitutional requirement onto the sentencing statutes ... would prevent a judge from relying upon a presentence report for factual information, relevant to sentencing, uncovered after the trial. In doing so, it would, even compared to pre-Guidelines sentencing, weaken the tie between a sentence and an offender's real conduct. It would thereby undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways."

*Booker,* 125 S.Ct at 760.

And, it has also been followed by every circuit to consider the question. See, *United States. v. Patient Transfer Service, Inc*. 413 F.3d 734 (8th Cir.2005)(citing *United States v. Pirani,* 406 F.3d 543, 551 n. 4(8th Cir.2005): "Nothing in *Booker* suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime."); *United States v. Gonzalez,* 407 F.3d 118 (2d Cir.2005) (stating that a judge's authority to resolve disputed facts by a preponderance of evidence when arriving at a Guidelines sentence "endures post-*Booker"* )

  This court believes that this approach comports with the holding of *Booker* and due process. "In the post-*Booker* world, sentencing judges have discretion to weigh a multitude of factors that were not ordinarily relevant or appropriate to consider under the previous regime." *United States v. Paladino*, 401 F.3d 471, 487-488 (Kanne, J. dissenting). Thus, the court has at its disposal, discretion which it was not afforded prior to the decision in *Booker* which is capped only by what is a "reasonable" sentence. *Booker* 125 S.Ct. at 767 ("the courts of appeals review sentencing decisions for unreasonableness."). The requirement of reasonableness further protects defendants from arbitrary decisions by judges even under a preponderance of the evidence standard. Moreover, defendants now have the opportunity to argue the entire universe of factors that guides sentencing prior to imposition of sentence and have the arguments reflected in the record. *Paladino*, 401 F.3d at 488 ("[d]efendants should have the opportunity to argue these factors in a full resentencing hearing and have them reflected in the record.").

  Finally, it goes without saying that defendants are guaranteed meaningful appellate review to protect against an arbitrary sentence unless, of course, such a right is voluntarily waived in a plea agreement. But, even in such a case due process is served through a thorough Fed.R.Crim.P. 11

10

plea colloquy in which the court assures itself that the plea is voluntary and the defendant is advised of his Constitutional rights, his waiver of such rights by pleading guilty and any specific provision in the plea agreement waiving his right to appeal his sentence. And, to the extent, a defendant further disputes whether due process is served, he may appeal the manner in which his plea was procured and challenge the validity of the plea agreement. Thus, procedural due process is clearly afforded defendants. In light of all of these protections, the court cannot conclude that due process requires the use of a reasonable doubt standard to determine sentencing factors.

**Motion to Reconsider**

As noted at the outset, Kitchin has moved for reconsideration of this court's prior sentencing memorandum. Kitchin pled guilty to one count of mail fraud, 18 U.S.C. §1341 and one count of willful failure to file a tax return, supply information or pay tax in violation of 26 U.S.C. §7203. Based upon the prescribed statutory penalties for these crimes, Kitchin faced a maximum statutory sentence of six years imprisonment, a fine of $350,000, a minimum term of 2 years supervised release capped at 3 years, restitution and a $125.00 special assessment. Thereafter, the probation officer prepared the PSR wherein she concluded Kitchin's base offense level as to Count 1[6] was 6 with the following adjustments

- An 11 level increase pursuant to U.S.S.G. §2F1.1(b)(1)(L) because the loss was more than $800,000 but less than $1,500,000)
- A 2 level increase pursuant to U.S.S.G. §2F1.1(b)(2)(B) because the scheme involved twenty-four victims
- A 2 level increase pursuant to U.S.S.G. §2F1.1(3) because the offense was committed through mass-marketing
- A 2 level increase pursuant to U.S.S.G. §3B1.3 for abuse of a position of trust.

---

[6]The probation officer calculated Kitchin's base offense level for count 2 to be 12 with no adjustments. However, under U.S.S.G. §3D1.4, the greater adjusted offense level is used meaning that the base offense level for Count 1 was utilized.

11

These adjustments resulted in an adjusted offense level of 23. The probation officer then reduced the adjusted offense level 3 levels for acceptance of responsibility, leaving Kitchin with a total offense level of 20 and a criminal history category of 1. His guideline range was 33-41 months.

Kitchin objected to the two level enhancement under U.S.S.G. §2F1.1(3) for mass marketing and the two level enhancement under U.S.S.G. §3B1.3 for abuse of a position of trust and, after considering briefs on the issue, the undersigned sustained Kitchin's position on the abuse of a position of trust objection but overruled his objection to the mass-marketing enhancement leaving his sentencing range at 27 to 33 months. Kitchin raised no objection to the enhancement for the amount of loss.

In light of the court's discussion above, it shall not reconsider its previous order relating to the various enhancements under the now advisory guidelines. Defendant is, consistent with Seventh Circuit precedent, entitled to a full sentencing hearing wherein he may present evidence and/or argue as to why his sentence should be less than that suggested by the guidelines. The Motion to Reconsider is DENIED.

**Medical Departure**

The court is also aware that Kitchin's request for a downward departure based upon his medical condition, discussed in this court's June 2004 Order, remains under advisement. From Kitchin's initial submissions, his medical needs are extensive. Kitchin is a quadriplegic requiring ongoing neurological treatment as well as almost constant nursing attention. Given the length of time since this court has last received evidence relating to Kitchin's medical condition as well as the BOP's assessment of whether it has the facilities and personnel to provide appropriate medical

care for him, the court will hear further arguments and/or testimony as to the extent of Kitchin's medical condition/medical needs as well as the BOP's ability to care for Kitchin's needs at the sentencing hearing.[7]  To facilitate the portion of the hearing related to Kitchin's request for a downward departure related to his medical condition, within fifteen (15) days, defense counsel shall provide to the Government and the court a "status report" as to the defendant's current medical condition and medical needs. Once the status report is filed, the parties will be notified of the date and time for the sentencing hearing by separate minute entry.

## CONCLUSION

Defendant's Motion to Reconsider is DENIED. Defense counsel is ordered to file, within fifteen (15) days, a "status report" as to Kitchin's current medical condition and ongoing medical needs. Once that report is received, the court shall set a sentencing hearing and notify all parties by minute entry.

This 16th day of August 2005.

s/ William C. Lee<br>
United States District Court<br>
Northern District of Indiana

---

[7] The Government has submitted a letter from Capt. Newton E. Kendig, M.D., Medical Director of the Federal Bureau of Prisons ("BOP") dated May 14, 2004, in which he indicates that he is aware of Kitchin's medical needs and believes the BOP is fully capable of providing care consistent with Kitchin's medical needs. However, this letter is more than a year old and may not fully account for Kitchin's present medical needs. Accordingly, the Government should be prepared to have Dr. Kendig or some other appropriate BOP individual provide testimony at the sentencing hearing as to whether Kitchin's specific medical needs can be met by a BOP facility.