UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CASE NO.  1:03-CR-036 |
| ) | |
| STEVEN L.  KITCHIN  ) | |
| ) | |
| Defendant.  ) | |

**OPINION AND ORDER**

This matter is before the court for resolution of Kitchin's request for a departure from the advisory guidelines range based upon his medical condition.  This court has previously resolved Kitchin's objections to the sentencing guidelines calculation (June 10, 2004 Order) and considered a motion to reconsider that order (May 26, 2005 Order).  As it stands presently, Kitchin's guideline range is 27 to 33 months.[1]

Throughout the course of these proceedings, Kitchin has sought a departure from the guidelines due to his medical condition.  In May 1999 (after the federal offenses here were committed), Kitchin was involved in an automobile accident in which he suffered a cervical spine fracture dislocation at the C6-7 vertebrae resulting in quadriplegia. He has no hand or leg function but does have limited use of his biceps and triceps muscles in his arms. He presently utilizes an

---

[1] Kitchin pled guilty to one count of mail fraud, 18 U.S.C. §1341 and one count of willful failure to file a tax return, supply information, or pay tax in violation of 26 U.S.C. §7203.  Based upon the prescribed statutory penalties for these crimes, Kitchin faced a maximum statutory sentence of six years imprisonment, a fine of $350,000, a minimum term of 2 years supervised release capped at 3 years, restitution and a $125.00 special assessment.  Thereafter, the probation officer prepared the PSR  wherein Kitchin's guideline range was calculated to be 33 to 41 months.  After resolution of Kitchin's objections to this guideline range, Kitchin's sentencing range is 27 to 33 months.

1

electric wheelchair and operates a van that is equipped with operator-assisted controls. Kitchin requires extensive and substantial daily care, a summary of which is provided below.

According to Kitchin's physicians, daily physical therapy is essential to Kitchin's health and includes three components, weight training, use of an electrical stimulation bike (ERGYS), and daily use of an easy stand glider. In addition, Kitchin needs assistance getting into bed and must have a bed that elevates his head and feet to assist him with breathing and circulation. He must also be turned every 3-4 hours to prevent bed sores. Kitchin must also attend to his bowel and bladder functions. Kitchen uses intermittent catheter techniques which must occur every 4 hours in a sterile environment. Kitchin can perform this technique himself; however, the catheters and other equipment must be readily available since quadriplegics cannot feel their bladders and a distended bladder can lead to a variety of serious conditions. Kitchin requires bowel management which necessitates 2 hours of daily nursing assistance. The regimen begins with Kitchin being given a suppository and ten minutes thereafter he is transferred to a toilet. Digital stimulation is required every 15 minutes for an hour and thereafter several cleaning saline enemas are utilized until the rectum is cleaned. Kitchin must then be showered and/or cleaned off.

Prior to the last sentencing hearing in this cause, counsel provided the court with five CD ROMS chronicling the daily care and routine that Kitchin presently receives in his home through his wife and various nurses that attend to him. This court has watched the five CD-ROMS and the high level of care Kitchin receives in his home environment is phenomenal. Given the amount and quality of care he presently receives, Kitchin understandably has raised concerns that the Bureau of Prisons cannot adequately accommodate his medical needs if he is required to serve a term of imprisonment. That said, the Bureau of Prisons has consistently maintained, after several different

reviews of the medical records and, most recently, viewing the CD-ROMS provided by Kitchin, that it has the personnel, resources, and the facilities available to adequately treat Kitchin's medical conditions.

Under *United States v. Booker,* 543 U.S. at 259-60 (2005), the sentencing guidelines are no longer a mandatory regime. Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a). In fashioning an appropriate sentence, "[t]he Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just as he would have done before *Booker,* and then--because *Booker* demoted the guidelines from mandatory to advisory status--to decide whether the guidelines sentence is the correct sentence to give the particular defendant." *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005). As noted earlier, after resolving Kitchin's objections to the presentence report, his guidelines range is 27 to 33 months.

Turning now to whether the guideline sentence is the correct sentence to give Kitchin, the most recent Supreme Court pronouncements and Seventh Circuit authorities dictate that a sentencing court must consider a defendant's arguments that factors enumerated in 18 U.S.C. § 3553(a) warrant a sentence below the guidelines range, but it is not compelled to accept those arguments. *See United States v. Williams,* 436 F.3d 767, 769 (7th Cir.2006); *United States v. Lopez,* 430 F.3d 854, 857 (7th Cir.2005). Indeed, a sentence within a properly calculated guidelines range is presumed to be reasonable, *see United States v. Paulus,* 419 F.3d 693, 700 (7th Cir.2005); *United States v. Mykytiuk,* 415 F.3d 606, 608 (7th Cir.2005). Here, Kitchin seeks a departure from the calculated guidelines range based upon his medical condition. However, the Seventh Circuit has made it clear that speaking of below-guidelines sentences in the old *pre-Booker* parlance of "guideline departures" is

3

an "unnecessary diversion," *United States v. Laufle,* 433 F.3d 981, 986 (7th Cir.2006); *see also United States v. Walker,* 447 F.3d 999, 1005-06 (7th Cir.2006); *United States v. Castro-Juarez,* 425 F.3d 430, 436 (7th Cir.2005), and that "framing of the issue as one about 'departures' has been rendered obsolete" by Booker.  "[W]hat is at stake is the reasonableness of the sentence, not the correctness" of a departure ruling "as measured against pre- *Booker* rulings." *United States v. Johnson,* 427 F.3d 423, 426 (7th Cir.2005). Under these authorities then, the only relevant question for this court is whether Kitchin's medical condition, when considered as a factor under § 3553(a), warrants a reduction from the otherwise properly calculated guidelines sentence. *See Laufle,* 433 F.3d at 986.

Section 3553(a) of Title 18 of the United States Code instructs sentencing judges to "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing." This section further instructs that courts, in determining the particular sentence to be imposed, should consider the several factors listed in § 3553(a) including the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, *id.* §3553(a)(2)(A)-(D); the sentencing range suggested by the Guidelines, *id.* § 3553(a)(4), and the need for sentencing uniformity for defendants with similar criminal histories and found guilty of similar conduct, *id.* § 3553(a)(6).

This court has given serious consideration to these factors and, in particular, to the history and characteristics of this defendant and the seriousness of the offense.  As for Kitchin's history, this

4

is his first offense and places him in criminal history category one, which does weigh in his favor. Similarly, Kitchin, despite his medical restrictions, participates in numerous youth organizations and volunteers to coach youth athletics. However, it is the severity of Kitchin's crime, and the need for just punishment and adequate deterrence, that gives the court considerable pause in sentencing Kitchin below the applicable guidelines range.

Kitchin concocted a scheme using his business, ARS, between August 1, 1997 and September 30, 1998 to provide false third party athletic accident insurance to approximately 22 colleges, universities and schools in Alabama, Illinois, Indiana, Louisiana, Michigan, Mississippi, Ohio, South Carolina, and Tennessee. Kitchin deposited premium checks from these colleges and universities totaling between $800,000 and $1,500,000 into his business accounts. Although the schools made these premium payments to Kitchin with the expectation that third party coverage was being obtained, no third party coverage was obtained. However, the schools did receive via United States mail documentation showing that such coverage had, in fact, been obtained, such as: renewal reports indicating the name of the third party insurance carrier, the carrier's rating, the amount of the premium and benefits; invoices from ARS for premiums due; letters providing verification of coverage; copies of false policies or policy information. Kitchin's scheme was extensive, well-planned, and involved mass-marketing. The Government and the defendant agree that the loss caused by this scheme was more than $800,000 but less than $1,500,000.

Recently, the Eleventh Circuit, in finding a below-guidelines sentence unreasonable, reminded district judges that they should "consider the policies behind the applicable guidelines provision" *United States v. Crisp*, 454 F.3d 1285,1292 (11th Cir. 2006) (citing 18 U.S.C. §3553(a)(5)), in fashioning reasonable sentences. In that case, like the present case, Crisp plead

5

guilty to a fraudulent scheme that bilked innocent businesses out of nearly half a million dollars. In Crisp's case, he prepared false financial statements overstating his employer's accounts receivable to a financial institution to induce the institution to extend credit to his employer. Initially, Crisp's guideline range was 24-30 months; but, Crisp provided substantial assistance to the Government in the prosecution of a co-conspirator and the Government recommended a guideline range of 12-15 months. The Court, however, departed further arriving at a post-departure range of 6-12 months. Thereafter, the judge sentenced Crisp to five hours imprisonment and probation. The district judge offered this rationale for the sentence, "[i]f the court were to impose even a short period of imprisonment, . . . the goal of restitution would be thwarted because it would adversely affect [Crisp's] ability to earn a living so as to be able to make restitution payments." *Id.* at 1288. In rejecting the court's rationale, the Eleventh Circuit stated:

> The Commission has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.

*Id.*

Citing to Eleventh Circuit's decision in *Crisp*, the Seventh Circuit recently declared a sentence unreasonable where, as in *Crisp*, the amount of loss was near $400,000, but the court imposed a sentence of probation. *United States v. Wallace*, 458 F.3d 606, 613-614 (7th Cir. 2006). There, the sentencing court concluded that despite the amount of loss, the defendant's "extraordinary remorse" combined with his psychological problems, gambling addiction, and post-offense counseling warranted a departure from the advisory guidelines range of 24-30 months. Upon review of the sentence for reasonableness, the Seventh Circuit vacated and remanded the case because, "in

6

the end, it is the fact that the court chose to eliminate any meaningful incarceration for a crime that involved $400,000 of intended loss that makes this such an extraordinary choice." *Id.*

Assuming then that the amount of loss is one of the key factors in determining the seriousness of offenses like the present one, there can be no question that a term of imprisonment is appropriate in this case. The loss figure here, somewhere between $800,000 and 1.5 million, is even greater than that in both the *Crisp* and *Wallace* cases. If it was unreasonable to sentence Crisp and Wallace to probation rather than a term of imprisonment, it certainly stands to reason that it is unreasonable to do so in this case, absent a compelling justification to the contrary – a justification not present here.

Aside from the large loss figure here, it is also critical to note that the victims of this crime were not merely the universities and colleges that paid premiums for non-existent insurance coverage, but also student athletes injured in athletic activities at these universities and their families. In one case, a student at Heritage Christian Schools (one of Kitchin's victims) was accidentally injured in practice and suffered (ironically) quadriplegia as a result. The family of that student filed multiple claims with Kitchin's company (ARS) for reimbursable medical expenses but these claims were never paid by ARS. This family endured considerable hardship, aside from emotional trauma caused by the injury itself, related to payment of the medical bills due to the university's lack of insurance. Thus, it is fair to say that Kitchin's victims extended well beyond the universities and colleges that he defrauded.

The court further believes that a sentence within the guidelines range is necessary in this case to provide adequate deterrence to other white collar criminals and to ensure sentencing uniformity with other defendants committing similar crimes. Aside from Kitchin's medical

7

condition, discussed below, there is simply nothing in the record or in the manner that the crime was conducted that differentiates Kitchin from any other white collar criminal.

As noted, Kitchin seeks some reduction below the guidelines range because of his medical condition. While the court is sympathetic to Kitchin's belief that he will receive a lesser degree of care from the Bureau of Prisons than he receives in his home environment, this belief is not supported by any evidence that the Bureau of Prisons is unable to accommodate his medical needs. The Bureau of Prisons has repeatedly indicated that it has the facilities and personnel to provide adequate care to Kitchin while he is incarcerated. For this court to impose any meaningful imprisonment reduction, this reduction would have to be supported by an extraordinary rationale – a "World Series" explanation as the Seventh Circuit has termed it. *See Wallace*, 454 F.3d at 614 ("The district court acknowledged that it was giving Wallace a significant break – a 'World Series' break, in fact. Such a break requires, we hold, a 'World Series' explanation."). Given that the Bureau of Prisons maintains that it can accommodate Kitchin, there is simply nothing extraordinary about his circumstances to justify a reduction of the recommended guidelines range of imprisonment, much less a reduction from a term of imprisonment to probation.

Having said all this, the Court has some skepticism as to the type of care that can be provided by the Bureau of Prisons as well as some policy concerns as to whether the best course is to incarcerate Kitchin. The Court fully expects the Bureau of Prisons to notify the Court if, after Kitchin reports to the Bureau of Prisons, it cannot accommodate his medical needs. Despite the court's policy concerns about whether incarceration is, in fact, the best alternative here, all of the above factors leads the court to the conclusion that a guidelines sentence is appropriate in this case. Accordingly, Kitchin's request for a below-guidelines sentence is DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's request for a departure from the advisory guidelines range is DENIED. The sentencing date of 12/18/06, 11:30 a.m. is CONFIRMED.

SO ORDERED.

This 8th day of December 2006.

William C. Lee
United States District Court
Northern District of Indiana